UNITED STATES DISTRICT COURT                JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-13-04253-MWF (AJWx)          **Date:  May 21, 2014**
Title:      Eunice Huthart -*v*- News Corporation, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  | Deputy Clerk: | Court Reporter: |
|---|---|---|
|  | Rita Sanchez | Not Reported |

|  | Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|---|
|  | None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS FOR FORUM NON CONVENIENS [41],
DENYING MOTION TO INTERVENE AS MOOT
[61], AND DENYING EX PARTE APPLICATION
TO CONTINUE MOTION TO INTERVENE AS
MOOT [65]

This matter is before the Court on the Motion to Dismiss Under FRCP Rules
12(b)(2), 12(b)(6), and for Forum Non Conveniens (the "Motion"), filed by Defendants
News Corporation ("News Corp."), NI Group Limited f/k/a News International
Limited ("NI"), and News Group Newspapers Limited ("NGN").  (Docket No. 41).
The Court read and considered the papers filed on this Motion, and held a hearing on
**February 24, 2014**.  Following additional briefing, the Court **GRANTS** the Motion.

The underlying facts here do not seem to be in dispute, at least by these parties.
It appears, and certainly is alleged, that Plaintiff Eunice Huthart has suffered a
grotesque invasion of her privacy.  This harm arose for no reasons other than Huthart's
successfully pursuing a demanding career associated with Los Angeles and having a
friend who likewise is at the summit of success in an industry associated with Los
Angeles.  Nonetheless, for the reasons explained in this Order, the Court concludes that
Huthart must obtain her relief from the courts of England and Wales.

**Background**

UNITED STATES DISTRICT COURT                     JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-04253-MWF (AJWx)              Date:  May 21, 2014**

Title:      Eunice Huthart -*v*- News Corporation, et al.

On June 13, 2013, Huthart initiated this action by filing a Complaint in this Court.  (Docket No. 1).  The Complaint alleges that Huthart is a citizen of the United Kingdom and resides in Liverpool, England.  (Compl. ¶ 4).  But between early January 2004 to mid-June 2004, and from mid-March 2005 to mid-May 2005, Huthart lived and worked in Los Angeles, California as a professional stunt double for actress Angelina Jolie.  (Compl. ¶ 4).  The Complaint alleges that during this time period, various British media companies, primarily agents working for two British newspapers, The Sun and News of the World, unlawfully intercepted her voice-mail messages on cellular telephone systems to obtain information about Jolie.  (Compl. ¶¶ 11, 12, 16-21, 45-68).  The Complaint alleges that these actions were part of a large-scale hacking scheme (Compl. ¶¶ 11-44), which have received much media attention and will be referred to in this Order as the "Hacking Scheme."

The Complaint alleges six claims: (1) violation of the Stored Communications Act, 18 U.S.C. §§ 2701, 2707; (2) violation of the Wiretap Act, 18 U.S.C. §§ 2510, 2511, 2520; (3) violation of the California Constitution, art. I, § 1; (4) violation of California Penal Code §§ 630, 631, 632, 632.7, 637(2)(a); (5) violation of California Civil Code §§ 1708.8(b), 1708.8(d), 1708.8(e); and (6) a common law claim for intrusion into private affairs.

On September 20, 2013, Defendants filed this Motion.  On December 10, 2013, Huthart filed an Opposition to Defendants' Motion to Dismiss (the "Opposition"). (Docket No. 49).  On January 22, 2014, Defendants filed a Reply in Support of Defendants' Motion to Dismiss (the "Reply").  (Docket No. 54).  The briefs complied with the deadlines and page limits set by this Court.  (*See* Docket Nos. 40, 47).

After the hearing on February 24, 2014, the Court ordered supplemental briefing on two issues: (1) whether England's managed litigation system set up to deal with claims arising from the Hacking Scheme, the Mobile Telephone Voicemail Interception Litigation ("MTVIL"), would accept Huthart's claim; and (2) whether Huthart would otherwise be able to bring a lawsuit in the regular civil litigation system in England.  (Docket No. 56).

UNITED STATES DISTRICT COURT                      JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014**

Title:      Eunice Huthart -*v*- News Corporation, et al.

On March 17, 2014, Defendants filed a Supplemental Briefing Pursuant to the Court's February 25, 2014 Order ("Defendants' Brief").  (Docket No. 57).  That same day, Huthart also filed a Supplemental Memorandum of Position and Authorities in Opposition to Defendants' Motion to Dismiss ("Huthart's Brief").  (Docket No. 58).  Both briefs were timely filed.

**Evidentiary Objections**

Both sides have submitted numerous evidentiary objections.  (*See* Docket Nos. 50-1, 50-2, 50-3, 50-4, 50-5, 50-6, 54-9, 54-10, 54-11, 54-12).  Most of these objections are not aimed at the evidence relevant to the forum non conveniens analysis, on which this Order turns.  To the extent that the objections are relevant to the forum non conveniens analysis, they challenge very specific details for lack of foundation.  However, the Hacking Scheme and the investigations and legal proceedings related to it are set forth in sufficient detail in the Complaint itself.  Moreover, these events have been the subject of significant media attention worldwide.  Furthermore, it does not appear that the parties dispute Huthart's access to the regular civil litigation system of England, as opposed to the specialized venues established to address the Hacking Scheme.  Accordingly, the Court's analysis and conclusion would have not differed, regardless of whether the objections were sustained are overruled.

Therefore, both parties' objections are **OVERRULED** as moot.

**Requests for Judicial Notice**

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Defendants filed two requests for judicial notices: (1) Request for Judicial Notice in Support of Motion to Dismiss ("Defendants' First Request") (Docket No. 41-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014

Title:       Eunice Huthart -*v*- News Corporation, et al.

8), and (2) Request for Judicial Notice in Support of Defendants' Reply in Support of Motion to Dismiss ("Defendants' Second Request").  (Docket No. 54-1).  Of the documents for which Defendants seek judicial notice, only two are relevant to the forum non conveniens analysis.

*First*, Exhibit 1 of the Declaration of Christa Jane Band (the "Band Declaration") (Docket No. 41-2) is a court order in the consolidated litigation in England relating to the Hacking Scheme.  (Band Decl., Ex. 1).  Because that litigation is related to this one, the Court order is appropriate for judicial notice.  *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (citing *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)) (stating that a court may take judicial notice of court records in another case).

*Second*, Exhibit 2 of the Band Declaration is the Terms of Reference of the Leveson Inquiry, which investigated the Hacking Scheme.  (Band Decl., Ex. 2).  Exhibit 2 was taken from the Leveson Inquiry's website, and is appropriate for judicial notice.  *See Matthews v. Nat'l Football Council*, 688 F.3d 1107, 1113 & n.5 (9th Cir. 2012) (taking judicial notice of relevant statistics available on the NFL's website); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

Therefore, Defendants First Request is **GRANTED** as to these two Exhibits.  The remainder of Defendants' First Request and Defendants' Second Request is **DENIED** as irrelevant.

On December 10, 2013, Huthart filed a Request for Judicial Notice in Opposition to Motion to Dismiss ("Huthart's Request").  (Docket No. 49-1).  Of the documents for which Huthart seeks judicial notice, items 1-7, 13, and 15 are relevant to the forum non conveniens analysis.  These documents consist of relevant public documents found online and documents filed in relevant litigation.  For the reasons stated above, both of these categories of documents are appropriate for judicial notice.

CIVIL MINUTES—GENERAL                                                    4

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV-13-04253-MWF (AJWx)**          **Date:  May 21, 2014**
Title:       Eunice Huthart -*v*- News Corporation, et al.

        Therefore, Huthart's Request is **GRANTED** as to items 1-7, 13, and 14.  The remainder of Huthart's Request is **DENIED** as irrelevant.

**Motion to Dismiss**

        The Motion seeks dismissal of this action on four grounds: (1) forum non conveniens; (2) lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), as to NI and NGN, which are citizens of the United Kingdom; (3) failure to state a claim, under Rule 12(b)(6), as to News Corp., on the ground that the Complaint fails to establish a basis to pierce the corporate veil; and (4) failure to state a claim, under Rule 12(b)(6), on the grounds that two of the statutes governing Huthart's claims do not apply to extraterritorial conduct, three of her claims lack sufficient factual allegations, and all claims are time-barred.  (Mot. at 6-7).

        This Court can examine the merits of the forum non conveniens argument before addressing the jurisdictional issues.  The Supreme Court has stated:

        We hold that a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection.  In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007).

        Because the proposed alternative forum in this action is England, the appropriate analysis is the forum non conveniens doctrine, as opposed to a motion to transfer pursuant to 28 U.S.C. § 1404.  *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. __, 134 S. Ct. 568, 580 (2013) (stating that § 1404 is the appropriate mechanism when "the transferee forum is within the federal court system,"

_____
**CIVIL MINUTES—GENERAL**                               **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014

Title:       Eunice Huthart -*v*- News Corporation, et al.

but that courts should apply the doctrine of forum non conveniens in cases seeking transfer to a "nonfederal forum"); *Sinochem Int'l*, 549 U.S. at 430 (same).

Under the forum non conveniens doctrine, the party moving to dismiss bears the burden of showing that (1) there is an adequate alternative forum for this action, and (2) the balance of private and public interest factors favors dismissal.  *See Sinochem Int'l*, 549 U.S. at 429 (summarizing the legal standard for forum non conveniens).

**Adequate Alternative Forum**

"The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).  "The Supreme Court has held that an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum."  *Id.*  Moreover, "[t]he foreign forum must provide the plaintiff with some remedy for [her] wrong in order for the alternative forum to be adequate."  *Id.*

Here, England provides an adequate alternative forum.

With regard to jurisdiction and service of process, England would have jurisdiction over NI and NGN because they are incorporated, registered, and headquartered in England.  (Declaration of Craig Wyndham Orr QC ¶¶ 22-24 (the "Orr Declaration") (Docket No. 41-4)).  England would also have jurisdiction over News Corp., the only non-English Defendant, because it has agreed to waive any challenge to personal jurisdiction in the English courts.  (Orr Decl. ¶¶ 25; *see also* Mot. at 8).  Moreover, it appears that England may have jurisdiction over News Corp., even if it did not submit to personal jurisdiction there.  (Orr Decl. ¶¶ 26-27).

With regard to the entity consenting to personal jurisdiction, Defendants explain that on June 28, 2013, News Corp. separated into two independent publicly traded companies.  (Declaration of Gerson A. Zweifach ¶ 2 (the "Zweifach Declaration") (Docket No. 41-7)).  The entity named in the Complaint, News Corp., changed its name to 21st Century Fox, Inc. ("21st Century") and continued to be the parent

---

UNITED STATES DISTRICT COURT                          JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV-13-04253-MWF (AJWx)          **Date:  May 21, 2014**
Title:        Eunice Huthart -*v*- News Corporation, et al.

company of most of News Corp.'s entertainment-related entities.  (Zweifach Decl. ¶ 2).
A new company was also created bearing the name News Corporation ("New News
Corp.") and became the parent company of most of News Corp.'s news media-related
entities.  (Zweifach Decl. ¶ 2).  News Corp.'s successor, 21st Century, agrees to waive
any challenge to personal jurisdiction.  (Zweifach Decl. ¶ 3).

In the supplemental briefing, Huthart argues for the first time that she cannot
bring her claims against all Defendants in England because the real party in interest is
not 21st Century, but New News Corp., which did not consent to jurisdiction.
(Huthart's Brief at 2-4).  Huthart argues that the print media entities involved in the
Hacking Scheme are now attributed to New News Corp., that it can be inferred that the
bulk of relevant documentary evidence is maintained by New News Corp., and that
Securities and Exchange Commission filings confirm that New News Corp. is liable
for civil claims arising out of the hacking scheme.  (Huthart's Brief at 3).

In response, Defendants filed an Objection to Plaintiffs' Supplemental
Memorandum and Request to File Supplemental Declaration ("Defendants'
Objection") on March 21, 2014, after the deadline for supplemental briefing.  (Docket
No. 59).  Defendants object to Huthart's insinuation that Defendants misled the Court
when they asserted that 21st Century would consent to personal jurisdiction.
(Defendants' Objection at 1).  Defendants explain that 21st Century was the entity that
consented to personal jurisdiction because News Corp., the defendant named in the
Complaint, essentially became 21st Century.  (*Id.*).  Defendants also request leave to
file the Second Declaration of Gerson A. Zweifach (the "Second Zweifach
Declaration") (Docket No. 59-1), attesting that if Huthart also sues New News Corp. in
England, New News Corp. would consent to personal jurisdiction.  (Second Zweifach
Decl. ¶ 3; *see also* Defendants' Objection at 2).

Huthart, in turn, objects to the Defendants' Objection and the Second Zweifach
Declaration because they were filed after the deadline for supplemental briefing.  (*See*
Plaintiff's Objection to Defendant's March 21, 2014 Filing and Request That It Be
Stricken from the Record at 2 (Docket No. 60)).

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)              Date:  May 21, 2014
Title:      Eunice Huthart -v- News Corporation, et al.

        While Huthart is correct that these documents were filed late, the Court refrains
from striking them and permits the filing of the Second Zweifach Declaration.
Defendants' Objection responded to a new argument in Huthart's Brief, which was
arguably outside the scope of the supplemental briefing.  Moreover, the Court would
have likely asked for a response from Defendants to clarify which is the correct entity
to consent to personal jurisdiction.  The Court also notes that this issue could have
been raised in the Opposition because the first Zweifach Declaration was filed with the
Motion.  However, the Court does not treat the issue as waived.  Rather, it is resolved
for the reasons stated.

        In any event, there appears to be no dispute at this point that both 21st Century
and New News Corp. would be willing to submit to personal jurisdiction in England.
Therefore, Huthart would be able to sue all Defendants in England.  Contrary to
Huthart's contention (*see* Opp. at 6), the adequate alternative forum requirement "will
be satisfied when the defendant is 'amenable to process' in the other jurisdiction."
*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, n. 22, 102 S. Ct. 252, 70 L. Ed. 2d 419
(1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed.
1055 (1947), *superseded by statute on other grounds*).

        It further appears that England can provide some remedy to Huthart.  Defendants
described two avenues in England specifically created to handle claims related to the
Hacking Scheme: (1) a voluntary compensation scheme, and (2) the MTVIL system in
the English High Court.  (Mot. at 4).

        Huthart has submitted the Declaration of Mark Lewis (the "Lewis Declaration")
(Docket No. 49-3), which establishes that the first avenue is now closed.  (Lewis Decl.
¶ 7).  Therefore, the Court does not consider the voluntary compensation scheme as an
available venue.

        Huthart also argues that the second avenue, the MTVIL, is unavailable to her.
(Huthart's Brief at 5).  The MTVIL is a "managed litigation" system that was instituted
in the English courts to deal with claims arising from the Hacking Scheme.
(Declaration of Hugh Tomlinson ¶ 7 (the "Tomlinson Declaration") (Docket No. 58-3);

_____

UNITED STATES DISTRICT COURT                                JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-13-04253-MWF (AJWx)            Date:  May 21, 2014**

Title:       Eunice Huthart -*v*- News Corporation, et al.

*see also* Band Decl. ¶¶ 4-8; Third Declaration of Craig Wyndham Orr QC ¶¶ 4-5 (the "Third Orr Declaration") (Docket No. 57-2)).  The MTVIL provides consolidated case management, expedited discovery from the London Metropolitan Police Service and NGN, mechanisms to obtain discovery from third parties, early assessment of claims, and procedures for managing litigation costs.  (Band Decl. ¶ 7).  All cases filed in the English civil courts that fall within the scope of the MTVIL are automatically referred to the MTVIL.  (*Id.*).  Based on the criteria for MTVIL claims (Third Orr Decl. ¶ 5), Huthart's claims likely fall within the scope of the MTVIL.

        The litigation of claims in the MTVIL has proceeded in "tranches."  The current tranche of claims, Tranche 2, closed on January 31, 2014.  (Tomlinson Decl. ¶¶ 10-11).  Huthart also asserts that the managing judge for the MTVIL is disinclined to further extend the cut-off date for Tranche 2, and no new claims can join Tranche 2.  (Huthart's Brief at 5 (citing Tomlinson Decl. ¶¶ 11-12)).  Moreover, the MTVIL has not yet created a Tranche 3.  (Tomlinson Decl. ¶ 16).  If Huthart were to file claims in the English courts that fell within the scope of the MTVIL, her claims would be stayed pending the resolution of the Tranche 2 claims.  (Tomlinson Decl. ¶¶ 13-15; *see also* Third Orr Decl. ¶¶ 8-9).  Defendants assert that Huthart would nonetheless be able to apply to the court to lift the stay and to have her claim included with the Tranche 2 claims set for trial on October 1, 2014.  (Third Orr Decl. ¶ 9).

        The above facts do not demonstrate that the MTVIL is unavailable to Huthart.  They simply indicate that if Huthart's claims were referred to the MTVIL, their resolution may be delayed because they were filed after Tranche 2 closed.  Huthart has cited no legal authority establishing that such a stay or delay of resolution renders a forum inadequate.

        Even if the MTVIL is no longer open to Huthart, Defendants have established that "the regular civil litigation processes of the courts of England and Wales" remain open to Huthart.  (Reply at 4).  Defendants' expert attests that "[i]f a claim does not qualify for inclusion in the MTVIL, it will be able to be brought in any division of the High Court in the normal way."  (Third Orr Decl. ¶ 7).  In fact, Huthart acknowledges that "it is technically correct that if no MTVIL Tranche 3 is established, then [she] can

---

UNITED STATES DISTRICT COURT          JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014
Title:      Eunice Huthart -*v*- News Corporation, et al.

file suit in the English Civil Court Proceedings." (Huthart's Brief at 6). However, Huthart objects that proceeding in the regular civil court would be "the litigation equivalent of purgatory" because her claims would be stayed pending the resolution of MTVIL claims. (Huthart's Brief at 7 & n.4). As noted above, the fact or possibility that Huthart's claims might be stayed does not render England an unavailable or otherwise inadequate forum. In our court system, for example, claims are routinely stayed to facilitate efficient administration, to avoid duplicative actions, and for other docket management reasons. Such stays do not mean that our courts are closed to those claims.

Therefore, Defendants have established that both the English court system and the MTVIL are available to Huthart to bring her claims. Moreover, England would provide some remedy for Huthart's claims, as discussed below.

English law recognizes claims for breach of confidence and misuse of private information. (Orr Decl. ¶¶ 11-16). Under English law, remedies for these claims include compensatory damages, account of profits, and injunctive relief. (Orr Decl. ¶ 17). Moreover, England has enacted a number of statutes, which prohibit the interception of communications over telecommunication systems, the unauthorized disclosure of personal data, and the unauthorized accessing of data held on a computer. (Orr Decl. ¶ 18). Therefore, English law provides some remedy for Huthart's injuries.

Huthart argues that the MTVIL is an inadequate forum because it is structured to address claims against NGN and Glenn Mulcaire (who is the main NGN investigator implicated in the Hacking Scheme), whereas she has also alleged claims against NI and News Corp. (Huthart's Brief at 8). However, Defendants have established that claims against NI and News Corp. would not be barred from the MTVIL, so long as Huthart's claims meet the basic criteria. (Third Orr Decl. ¶ 6; *see also* Third Declaration of Christa Jane Band ¶ 6 (Docket No. 57-3) (noting that other claimants in the MTVIL have named defendants in addition to NGN and Mulcaire)).

Huthart also argues that the MTVIL is inadequate because its system of "paired" settlement offers is designed to favor early settlement and creates a disincentive for

CIVIL MINUTES—GENERAL          10

UNITED STATES DISTRICT COURT           JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)           Date:  May 21, 2014
Title:        Eunice Huthart -*v*- News Corporation, et al.

claimants to go to trial.  (Opp. at 5; Lewis Decl. ¶¶ 16-24).  However, the fact that the MTVIL incentivizes early settlement demonstrates that some remedy is available to Huthart, and nothing indicates that this remedy would be so inadequate as to constitute no remedy at all.  Moreover, Huthart could simply choose to proceed in the general civil court system, which does not appear to operate under the paired settlement system.

        Huthart also argues that English law offers no remedy for a significant portion of her claims.  (Huthart's Brief at 7-8).  In particular, she argues that England provides no cause of action to hold NI and News Corp. directly liable because they knew or should have known about NGN's hacking activity, failed to stop NGN's hacking, and participated in the cover-up of the hacking.  (Huthart's Brief at 8; Tomlinson Decl. ¶ 20).  Again, this argument could have been raised in the Opposition, but was not.

        On the merits, this argument appears to be more artful, than substantive.  Huthart has not explained what she means, or what claim for relief under American law would hold NI and News Corp. directly liable for such actions.  The Complaint does not allege a separate claim for relief specifically asserting that NI and News Corp. are liable for activities that they knew or should have known about, failed to stop, or participated in covering up.  Rather, it seems the gravamen of the Complaint is that all Defendants participated in the Hacking Scheme.  Each claim is alleged against all Defendants, and many of the claims turn on intentional or willful conduct.  (*See, e.g.*, Compl. ¶¶ 75, 76, 78, 81, 83, 100-104, 120).  Therefore, based on the allegations in the Complaint, it appears that there would be liability against all Defendants for their actions.  Huthart's expert, Hugh Tomlinson, is certainly well credentialed.  (*See* Tomlinson Decl. ¶¶ 3-4).  But he has not opined, nor would the Court find it credible if he did, that if all the allegations in the Complaint were true, NI and News Corp. would escape liability under English law.  In light of the Complaint's allegations that all Defendants committed the alleged acts, it is immaterial that there is no cause of action in England to hold NI and News Corp. liable for activities they knew or should have known about, failed to stop, or participated in covering up.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)              Date:  May 21, 2014

Title:      Eunice Huthart -v- News Corporation, et al.

Huthart also argues that England is an inadequate forum for her claims under the Stored Communications Act and the Wiretap Act.  (Opp. at 4).  In the supplemental briefing, Huthart further explains that the Stored Communications Act permits a claim for unauthorized accessing, obtaining, interfering with, or preventing access to a stored wired communication, without requiring that the person committing such acts actually obtain or listen to the content of the wire communication.  (Huthart's Brief at 9).  In contrast, "[n]o cause of action independent of actually listening to the communication or otherwise obtaining the content of the communication exists in England and Wales." (Tomlinson Decl. ¶ 22).  Therefore, Huthart argues that she cannot litigate the subject matter of her claim in England.  (Huthart's Brief at 9).

The Court is likewise not persuaded that Huthart would be unable to litigate the subject matter of her claims in England.  The Complaint alleges that Mulcaire and other unidentified investigators working for Defendants reset the pin number and password on the voicemails of their targets, and then "used and exploited the unlawfully-obtained information to note, record and/or transcribe voice-mail messages."  (Compl. ¶ 19).  Mulcaire and other unidentified investigators then provided the direct mobile numbers, passwords, and pin numbers to NGN journalists "to enable them to hack and/or listen to, or to read transcripts of voice-mail messages of targets."  (Compl. ¶ 20).  Mulcaire and others used the information in these voice-mail messages "in the preparation of articles or stories to be published by the Sun and News of the World."  (Compl. ¶¶ 19, 20).  The Complaint then alleges that Mulcaire and other investigators and journalists engaged in the above activities with regard to Huthart's cellphone, intercepting her voice-mail messages in order to obtain "the private and confidential information" on them.  (Compl. ¶ 54).

In other words, the subject matter of Huthart's claim is not limited to the allegation that Defendants and their agents simply accessed or interfered with her voicemails.  Rather, those allegations are part and parcel of a scheme, in which Defendants and their agents are alleged to have intercepted and obtained the information in Huthart's voicemails to use such information in tabloid stories. Tellingly, the Ninth Circuit has described the offense of accessing a communication under the Stored Communications Act as a "lesser included offense" of the offense of

---

**CIVIL MINUTES—GENERAL**                                          **12**

UNITED STATES DISTRICT COURT     JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014
Title:       Eunice Huthart -*v*- News Corporation, et al.

intercepting a communication under the Wiretap Act.  *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998).  Defendants have established that English law provides a cause of action for the unauthorized interception of communications under the Regulation of Investigatory Powers Act of 2000.  (Orr Decl. ¶ 18).

Huthart analogizes this case to *Phoenix Canada Oil Co. Limited v. Texaco, Inc.*, 78 F.R.D. 445, 456 (D. Del. 1978), in which the court found Ecuador to be an inadequate forum, in part, because no remedy existed under Ecuadorian law for two of three legal theories advanced by the complaint.  (*See* Huthart's Brief at 7-8).  However, the Court does not find *Phoenix* analogous.  Here, it appears that England does not recognize only one of six claims for relief in the Complaint.  Even so, that one claim is intertwined with and could be considered a lesser included offense of another claim, interception of communications, which is recognized under English law.

Therefore, the fact that Huthart may not have an additional claim against Defendants for accessing her voicemails does not render England inadequate.  *See Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1092 (9th Cir. 1998) ("[T]he fact that Plaintiffs could not assert a RICO cause of action under Yap or FSM [Federated States of Micronesia] law 'does not preclude a forum non conveniens dismissal.'").  It is generally irrelevant that the courts in the other jurisdiction may apply substantive law that is less favorable to Huthart.  *Piper Aircraft*, 454 U.S. at 249 (stating that "dismissal may not be barred solely because of the possibility of an unfavorable change in law").  "The district court [i]s not required to ask whether Plaintif[f] could bring this lawsuit in [the alternate forum], but rather, whether [the alternate forum] offers a remedy for their losses."  *Lueck*, 236 F.3d at 1143 (finding that New Zealand was an adequate alternative foreign, where New Zealand law did not permit Plaintiffs' to maintain the exact suit as in the United States, but New Zealand nonetheless provided a remedy for Plaintiffs' loses).  There is simply no evidence that the remedy available in England would be "so clearly inadequate or unsatisfactory, that it is no remedy at all."  *Lueck*, 236 F.3d at 1143 (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991)).

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-13-04253-MWF (AJWx)          **Date:** May 21, 2014
**Title:**      Eunice Huthart -*v*- News Corporation, et al.

Accordingly, Defendants have established that England is an adequate alternative forum for Huthart's claims.

**Private Interest Factors**

"Given the existence of an adequate alternative forum, a district court must consider the balance of private and public interest factors to determine whether to dismiss on grounds of forum non conveniens." *Lockman Found.*, 930 F.2d at 769.

"[U]nless the balance [of private and public interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508. However, "a foreign plaintiff's choice of forum merits less deference than that of a plaintiff who resides in the selected forum, and the showing required for dismissal is reduced." *Lueck*, 236 F.3d at 1145; *see also Piper Aircraft*, 454 U.S. at 255 (stating that the "presumption in favor of the plaintiff's choice of forum . . . applies with less force when the plaintiff or real parties in interest are foreign"); *Gemini Capital*, 150 F.3d at 1091-92 (holding that the plaintiff's decision to sue in Hawaii was properly accorded less deference than if Hawaii had been his true home forum). Moreover, a "truly 'foreign' plaintiff (*i.e.*, someone who is not a United States citizen or resident)" is accorded less deference than "an American citizen suing in a state other than his state of residence." *Boston Telecommc'ns Group, Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009). But "even as to such quintessentially foreign plaintiffs, it is clear that 'less deference is not the same thing as no deference.'" *Id.*

Huthart is a citizen and resident of the United Kingdom. (Compl. ¶ 4; Declaration of Eunice Huthart ¶ 2 (the "Huthart Declaration") (Docket No. 49-2)). She, however, "has worked in Los Angeles, California on numerous occasions" and is the sole owner of a California corporation. (Huthart Decl. ¶¶ 3, 4). Accordingly, the Court accords some deference to Huthart's choice of forum, but it is less deference than would be accorded if Huthart were a United States citizen or a California resident.

Courts consider the following private interest factors: (1) "the residence of the parties and the witnesses"; (2) "the forum's convenience to the litigants"; (3) "access to

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014
Title:       Eunice Huthart -*v*- News Corporation, et al.

physical evidence and other sources of proof"; (4) "whether unwilling witnesses can be
compelled to testify"; (5) "the cost of bringing witnesses to trial"; (6) "the
enforceability of the judgment"; and (7) "'all other practical problems that make trial
of a case easy, expeditious and inexpensive.'"  *Lueck*, 236 F.3d at 1145 (quoting *Gulf
Oil*, 330 U.S. at 508).

        ***First***, with regard to the residence of the parties and witnesses, this factor weighs
in favor of England.  Huthart herself, her husband, her daughter, and current and
former NGN employees involved in the alleged hacking are located in England.
(Compl. ¶¶ 45, 50-51; Band Decl. ¶ 18; Mot. at 12).  Huthart argues that other potential
witnesses, such as Jolie and employees of her California company, are located in
California.  (Opp. at 8; Huthart Decl. ¶ 14).

        "[A] court's focus should not rest on the number of witnesses or quantity of
evidence in each locale.  Rather, a court should evaluate 'the materiality and
importance of the anticipated [evidence and] witnesses' testimony and then
determine[] their accessibility and convenience to the forum."  *Lueck*, 236 F.3d at
1146.

        It appears that the most important witnesses are NGN's current and former
employees who were allegedly involved in and/or knew about the hacking because
they would be crucial to establishing Defendants' liability.  Similarly, the most
important evidence is that collected by the London Metropolitan Police Service since it
connects Defendants' agents to the Hacking Scheme.  For example, the Complaint
alleges that Huthart's "name, cellular telephone number, her account number, and/or
her PIN number appear on four separate pages" of notes recovered by the London
Metropolitan Police Service from the home of an investigator who was working for
NGN.  (Compl. ¶¶ 16, 17, 52).

        While Huthart argues that Jolie and employees of her California company are
relevant to establishing how the intercepted voice messages harmed her business
relationships (Opp. at 8), it would appear that Huthart could also testify about the harm

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014
Title:       Eunice Huthart -*v*- News Corporation, et al.

to her business relationships.  Therefore, these witnesses appear to be less important than the NGN employees.

Even according some deference to Huthart's choice of forum, it appears that the first factor weighs in favor of England.

*Second*, with regard to the forum's convenience to the litigants, this factor is neutral.  While it appears that the two United Kingdom Defendants would be inconvenienced to some degree if forced to litigate here, as opposed to England, Defendants have not addressed this factor head-on.  (*See* Mot. at 12 (stating only that "the UK is clearly the most convenient forum for this litigation")).  Moreover, given Huthart's residence in England, the Court cannot assume that litigation in this forum would be convenient for her.  "When the [plaintiff's] home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable."  *Piper Aircraft*, 454 U.S. at 255-56.

Given the lack of information regarding the forum's convenience to either party, the second factor provides little help in the analysis.

*Third*, with regard to access to sources of proof, this factor weighs in favor of England.  It appears that most of the relevant documents and physical evidence are located in England, including files recovered by the London Metropolitan Police Service, contracts between private investigators and NGN, and documents relating to British news stories that allegedly published information taken from Huthart's cellphone.  (Compl. ¶¶ 16, 17, 31, 60-65; Band Decl. ¶¶ 15-17).

It is true that the Ninth Circuit has deemphasized the inconvenience of transporting witnesses and documents overseas, due to advances in technology.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336 (9th Cir. 1984) ("[A] district court should keep in mind that 'the increased speed and ease of travel and communication . . . makes, especially when a key issue is the location of witnesses, no forum "as inconvenient [today] as it was in 1947,"' when the Supreme Court decided *Gilbert*.").  However, Defendants have established that they cannot simply scan and upload to a

UNITED STATES DISTRICT COURT            JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)            Date:  May 21, 2014
Title:      Eunice Huthart -v- News Corporation, et al.

database the documents relevant to this action.  (Reply at 10).  Instead, a number of the documents relevant to this litigation are being held by the London Metropolitan Police Service, and obtaining those documents would require applications to English courts. (*Id.*).  Accordingly, it would appear more burdensome and difficult to obtain these documents for litigation in this forum, when some of those documents are already being used in litigation in England.  Moreover, Huthart has not shown that any documents or other key pieces of evidence are located in California.  (*See* Opp. at 9 n.6 (stating only vaguely that "[e]vidence may also exist in the U.S.")).

Accordingly, this factor weighs in favor of England.

**Fourth**, with regard to the ability to compel unwilling witnesses, this factor weighs in favor of England.  As indicated above, most of the witnesses relevant to this action are located in United Kingdom and appear to be citizens of the United Kingdom. Accordingly, they are outside of this Court's subpoena power.  *See* Fed. R. Civ. P. 45(b)(2) & (3) (providing for service of a subpoena in the United States, or service of a subpoena on a United States national or resident who is in a foreign country).

Additionally, a party "can carry its burden" in showing that unwilling witnesses exist "by providing circumstantial evidence . . . that an ongoing 'criminal investigation provid[es] a major disincentive to voluntary testimony.'"  *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) (quoting *First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp. 2d 443, 450 (S.D.N.Y. 2001)).  Here, it appears that potential witnesses in this action are being criminally prosecuted in England for their involvement in the Hacking Scheme, as alleged in the Complaint and as established by Defendants.  (Compl. ¶¶ 16, 27, 29, 37; Second Declaration of Jonathan B. Pitt, Exs. 9 & 10 (Docket No. 54-6)). Conversely, the parties have not identified any unwilling witnesses who are not subject to the compulsory process in England.

Accordingly, this factor weighs in favor of England.

**Fifth**, with regard to the cost of bringing witnesses to trial, this factor weighs in favor of England.  As indicated above, the majority of the witnesses and virtually all of

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014
Title:      Eunice Huthart -v- News Corporation, et al.

the most important witnesses in this action are located in the United Kingdom.  While it seems likely that some of those witnesses, including Huthart, her family, and Jolie, can access this forum with relative ease, this forum appears to be less accessible to NGN's former and current employees, especially those facing criminal charges.

Accordingly, this factor weighs in favor of England.

**Sixth**, with regard to the enforceability of judgment, this factor appears neutral. Neither side has raised arguments that a judgment in this forum would be more or less enforceable than one in England.

**Seventh**, with regard to other practical problems that make trial easy, expeditious, and inexpensive, this factor weighs in favor of England.  Each case is unique, and thus, the details of Huthart's specific claims likely differ to some degree from other claims related to the Hacking Scheme.  Nonetheless, because the courts in England are experienced in handling other claims related to the Hacking Scheme, and the English courts have the authority to subpoena documents from the London Metropolitan Police Service and to compel unwilling witnesses located there to testify, it appears likely that litigation in England would be more efficient.  *See Lueck*, 236 F.3d at 1147 ("Given the existence of the related proceedings [in New Zealand], it is all the more clear that the private interest factors weigh in favor of dismissal."); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (affirming the district court's finding that "all other factors that render trial of the case expeditious and inexpensive" weighed in favor of dismissal because a "parallel action in the High Court of Singapore was further advanced than the United States action").

Therefore, five factors weigh in favor of England, two factors are neutral, and no factors weigh in favor of this forum.  The private factors thus strongly favor of England.

**Public Interest Factors**

Courts also consider the following public interest factors: (1) "local interest of lawsuit," (2) "the court's familiarity with governing law," (3) "burden on local courts

---

UNITED STATES DISTRICT COURT                     JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV-13-04253-MWF (AJWx)              **Date:  May 21, 2014**
Title:       Eunice Huthart -*v*- News Corporation, et al.

and juries," (4) "congestion in the court," and (5) "the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147.  The only factor truly at issue is the local interest factor.

*First*, with regard to local interest, California has some identifiable interest in this action, but that interest is outweighed by the other factors pointing to England as the appropriate site for litigation.

Both parties agree that England has a strong interest in this action.  (Mot. at 15-16; Opp. at 12).  Huthart is a United Kingdom citizen, and two Defendants are United Kingdom entities.  (Compl. ¶¶ 4, 6, 7).  A number of the potential witnesses are in the United Kingdom.  The information obtained through the alleged hacking was published in British newspapers.  Accordingly, England has devoted substantial efforts to addressing the Hacking Scheme: the London Metropolitan Police Service has conducted multiple criminal investigations; numerous individuals have been arrested and charged in England; England established the voluntary compensation scheme and the MTVIL system specifically for claims arising from the Hacking Scheme; and the Parliament of the United Kingdom has conducted numerous hearings on the phone hacking.  (*See* Mot. at 15-16).

Although Huthart objects to the manner in which Defendants introduced evidence regarding the events described above, Huthart does not dispute that the underlying events occurred.  In fact, Huthart references the above events in her Complaint.  (Compl. ¶¶ 11, 16, 23, 25, 27, 30-32, 36-37, 40, 60, 61).

It is clear from the resources and activity devoted to addressing the Hacking Scheme that England has a very high interest in this action.  *See, e.g.*, *Lueck*, 236 F.3d at 1141, 1147 (finding that "the interest in New Zealand regarding this suit is extremely high," where the action related to a crash involving a New Zealand airline carrying New Zealand passengers in New Zealand, and a New Zealand commission investigated the causes and circumstances of the accident).

CIVIL MINUTES—GENERAL                            19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)            Date:  May 21, 2014

Title:      Eunice Huthart -*v*- News Corporation, et al.

Huthart argues that California also has an interest in this litigation because her voicemail messages were hacked not only when she was in England, but also when she was in Los Angeles.  (Opp. at 12-13; Compl. ¶ 49).  Huthart also argues that while she was in Los Angeles, her voicemails were stored temporarily on facilities in the United States and then transmitted on United States-based networks to the United Kingdom. (Opp. at 37).  Defendants dispute that any United States networks or facilities were used in the alleged hacking.  (Reply at 12, n. 18).  Defendants argue that even while Huthart was in Los Angeles, her "voicemails were stored in servers owned and maintained in the UK by the UK provider Vodafone," and that her "voicemails were accessed from the UK, by UK citizens working for a UK publication owned by NGN." (Mot. at 15).

The Court need not resolve this factual dispute to determine this Motion.  Even assuming that Huthart's messages were stored temporarily in the United States and transmitted using United States-based networks, this activity does not create a sufficiently strong interest to outweigh the private interest factors and England's strong interest in this action.  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (holding that the local interest in the case was "tenuous" where the only asserted connection to the United States was the use of "U.S. wires" in various communications between the parties); *see also Piper Aircraft*, 454 U.S. at 261 (finding that "[t]he American interest in this accident [was] simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here," where the action related to an airplane accident in Scotland, the pilot and all decedents' heirs were Scottish citizens, and British authorities had investigated the accident, even though Defendants were American manufacturers); *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 846 (N.D. Cal. 2010) (finding that "[t]he American interest . . . ensuring the quality of component parts on aircraft and protecting the rights of two American citizens, is real and legitimate but less significant than the French interest," where "an Air France flight left Brazil for France carrying a plurality of French citizens and just two Americans living abroad at the time of the crash").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-13-04253-MWF (AJWx)          Date:  May 21, 2014

Title:       Eunice Huthart -*v*- News Corporation, et al.

Accordingly, while California has some minimal interest in this action, that interest does not justify the burden that litigation in this action would impose on this court system and the local jury.

**Second**, with regard to the court's familiarity with the governing law, this factor is neutral at best.  Huthart argues that she has brought claims under federal and California state law, and that this Court is more familiar with those laws, than an English court.  (*See* Opp. at 16).  However, Huthart relies on case law that interprets a choice-of-law clause.  (*See* Opp. at 15 (citing *Wash. Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 919, 103 Cal. Rptr. 2d 320 (2001)).  No such choice-of-law agreement is present here.  If this action were dismissed and brought in England, it appears that English courts would most likely apply English law under England's choice-of-law rules.  (Second Declaration of Craig Wyndham Orr QC ¶¶ 29-34 (the "Second Orr Declaration") (Docket No. 54-5)).  However, even if the English courts were to find that federal or California state law applied, it appears that the English Courts are accustomed to applying foreign laws, including those of the United States.  (Second Orr Decl. ¶ 35).

**Third**, with regard to court congestion, this factor also does not aid the Court's analysis.  Defendants have provided some data as to the congestion of the Central District of California.  (*See* Mot. at 16).  While the MTVIL system in England would appear to provide a more efficient mechanism for resolving Huthart's claims, her claims could possibly be stayed for some time if filed in the MTVIL.  (Tomlinson Decl. ¶¶ 13-15; *see also* Third Orr Decl. ¶¶ 8-9).  The parties have provided no information about the congestion of the general civil litigation system in England.  Accordingly, the Court cannot determine the "real issue," which is "not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."  *Gates Learjet*, 743 F.2d at 1337.  Moreover, administrative considerations such as docket congestion are given little weight in this Circuit in assessing dismissal under forum non conveniens.  *See id.* ("The *forum non conveniens* doctrine should not be used as a solution to court

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV-13-04253-MWF (AJWx)**          **Date:  May 21, 2014**
Title:      Eunice Huthart -*v*- News Corporation, et al.

congestion; other remedies, such as placing reasonable limitations on the amount of time each side may have to present evidence, are more appropriate.").

Even giving some deference to Huthart's choice of forum and acknowledging that California has a minimal interest in this action, the private interest factors and England's interest in this action weigh strongly in favor of dismissal.

The Motion is **GRANTED**.

The Motion to Intervene (Docket No. 61) filed by Brad Greenspan, and Defendants' *Ex Parte* Application to Continue Motion for Intervention of Brad Greenspan Pending the Court's Determination on Defendants' Motion to Dismiss (Docket No. 65) are both **DENIED** as moot.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.